UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-23011-ALTMAN/Reid

**PG RESTORATION COMPANY**,

    *Plaintiff*,

v.

**UNITED SPECIALTY INSURANCE COMPANY**, *et al.*,

    *Defendants.*
_____/

## ORDER

This insurance-coverage dispute arose from a 2018 roofing accident at the Virginia Oaks Condominium Association's property in Coconut Grove. Because of the accident, Virginia Oaks initiated arbitration proceedings against the contractor—PG Restoration Company ("PG")—in 2022.[1] PG then sued its insurers, United Specialty Insurance Company ("United") and Colony Insurance Company ("Colony"), in Florida's Eleventh Judicial Circuit, asserting claims of failure to defend and failure to indemnify. *See* First Amended State-Court Complaint (the "Amended Complaint") [ECF No. 1-2].[2] PG also named Virginia Oaks as one of the Defendants in that state case. *See ibid.* United then removed the state case to federal court (where it landed on our docket). *See* Notice of Removal

---

[1] That arbitration—which proceeded before the American Arbitration Association (the "AAA")—is styled *Virginia Oaks Condo. Ass'n v. PG Restoration Co.*, No. 01-22-0000-6084. Virginia Oaks and PG have agreed to "hold the arbitration proceeding in abeyance pending the resolution of this matter." October 12, 2023, AAA Letter [ECF No. 41-1].

[2] That state case is styled *PG Restoration Co. v. United Spec. Ins. Co., et al.*, No. 2023-012824-CA-01 (Fla. 11th Jud. Cir. Mar. 22, 2023). The parties' state-court filings are publicly available at www2.miamidadeclerk.gov. Under FED. R. EVID. 201, "a court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation.'" *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). And we do so here.

[ECF No. 1]. Shortly thereafter, Colony filed a Motion to Dismiss Count IV (the "MTD") [ECF No. 30], arguing that "a complaint seeking a declaratory judgement on the duty to indemnify is premature prior to the entry of a judgement against the insured." MTD at 1. As we prepared to adjudicate that motion to dismiss, we realized that we lacked subject-matter jurisdiction over this case. Both PG and Virginia Oaks are, after all, Florida entities. *See* Notice of Removal ¶¶ 12, 13, 16. We therefore "order[ed] the Defendants to show cause . . . why this case should not be remanded[.]" Order to Show Cause [ECF No. 42] at 3. The Defendants have responded to that order, *see* United's Response to Show Cause Order and Motion to Realign (the "Motion to Realign") [ECF No. 43],[3] but we remain unconvinced. After careful review, then, we **DENY** United's Motion to Realign and **REMAND** this case to Florida's Eleventh Judicial Circuit.

## FACTUAL AND PROCEDURAL HISTORY

In 2018, PG and Virginia Oaks "entered into an agreement for [PG] to perform roofing work . . . at Virginia Oaks located at 3304 Virginia Street, Coconut Grove, Florida, 33133." Amended Complaint ¶ 8. According to Virginia Oaks's Amended Statement of Claim [ECF No. 1-2][4]—filed before the AAA—PG "furnished a trash chute and dumpster for removal of the old roofing material . . . by attaching it to the south parapet wall. . . . As [PG] was performing demolition work, dumping loose roofing material into the trash chute, the parapet wall collapsed, [and the trash chute fell] unhindered, with its contents and broken pieces of the parapet wall, onto the pavement below." Amended Statement of Claim ¶ 12. "With the collapse of the trash chute, [PG] suspended their work." *Id.* ¶ 14. Virginia Oaks notified PG that "it was in default of the Construction Agreement," but PG "did not cure the default within the allotted time." *Id.* ¶¶ 19–20. In 2022, Virginia Oaks filed its AAA

---

[3] Colony joined in United's Motion for Realignment. *See* Colony's Notice of Joinder in United's Response to Show Cause Order and Motion to Realign [ECF No. 44]. Virginia Oaks (notably) did not. *See* Virginia Oaks's Objections to Removal and Realignment [ECF No. 45].

[4] This AAA Amended Statement of Claim has been appended to the Amended Complaint.

claim against PG for breach of contract, negligence, and indemnity. *See id.* ¶¶ 34–48. When PG "requested" that its insurers—Colony and United—"defend and indemnify it with respect to [the AAA action] against the Statement of Claim," Amended Complaint ¶¶ 10, 12, both "denied [PG's] defense and indemnity request," *id.* ¶¶ 11, 13.

On March 22, 2023, PG sued Colony, United, and Virginia Oaks in Florida's Eleventh Judicial Circuit.[5] *See* Initial State-Court Complaint [State DE No. 2]. Some time later, PG filed the Amended Complaint, in which it asserted the following four claims for declaratory relief: that United "has a duty to defend [PG] in the Underlying Action under the [United] Policy" (Count I); that United "has a duty to indemnify [PG] in the Underlying Action under the [United] Policy" (Count II); that Colony "has a duty to defend [PG] in the Underlying Action under the [Colony] Policy" (Count III); and that Colony "has a duty to indemnify [PG] in the Underlying Action under the [Colony] Policy" (Count IV). Amended Complaint ¶¶ 16, 39, 53, 64. United removed the state case to federal court on August 9, 2023—arguing that the parties are diverse and that the amount in controversy exceeds $75,000. *See* Notice of Removal [ECF No. 1] ¶¶ 12–25.

The following day, United answered the Amended Complaint. *See* United's Answer to Plaintiff's First Amended Complaint [ECF No. 3]. A little while later, Colony filed its MTD, in which it asked us to dismiss Count IV of PG's Amended Complaint because "[i]t is well-established . . . that a complaint seeking a declaratory judgment on the duty to indemnify is premature prior to the entry of judgment against the insured." MTD at 1. The MTD became ripe when PG filed its Response in Opposition to [Colony's] Motion to Dismiss [ECF No. 37] and Colony filed its Reply in Support of Its Motion to Dismiss [ECF No. 39].

---

[5] For simplicity's sake, we'll refer to Virginia Oaks as the "claimant," PG as the "insured," and United and Colony as the "insurers."

3

As we prepared to adjudicate that MTD, we realized that we likely lacked subject-matter jurisdiction over the case because we had *both* a Florida plaintiff (PG) *and* a Florida defendant (Virginia Oaks). We therefore "order[ed] the Defendants to show cause . . . why this case should not be remanded for lack of subject-matter jurisdiction." Order to Show Cause at 3. In its response, United "requests" that we "realign the parties" by turning Virginia Oaks into a plaintiff. Motion to Realign at 7. According to United, Virginia Oaks's "interests are aligned" with PG's. *Ibid.* Colony, for its part, has supported the Motion to Realign, *see* Colony's Notice of Joinder, but Virginia Oaks notably has not, *see* Virginia Oaks's Objections to Removal and Realignment.

## THE LAW

"Federal courts have an obligation to examine *sua sponte* their own jurisdiction over a case, notwithstanding the contentions of the parties." *DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1311 (11th Cir. 2020); *see also Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking."). "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1). "Federal diversity jurisdiction under 28 U.S.C. § 1332 requires 'complete diversity'—the citizenship of every plaintiff must be diverse from the citizenship of every defendant." *Legg v. Wyeth*, 428 F.3d 1317, 1320 n.2 (11th Cir. 2005); *see also MacGinnitie v. Hobbs Grp., LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005) ("Complete diversity requires that no defendant in a diversity action be a citizen of the same state as any plaintiff."). "It is the burden of the party seeking federal jurisdiction to demonstrate that diversity exists by a preponderance of the evidence." *Molinas Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1340 (11th Cir. 2011) (cleaned up). "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala.*, 168 F.3d at 411 (citing *Shamrock Oil & Gas Corp.*

*v. Sheets*, 313 U.S. 100, 108-09 (1941)). "Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *Ibid.* (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)).

"The parties themselves cannot confer diversity jurisdiction upon the federal courts by their own designation of plaintiffs and defendants." *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012) (citing *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941)). "[T]he converse of this principle—that parties cannot avoid diversity by their designation of the parties—is also true." *Ibid.* Instead, federal courts must "look beyond the pleadings, and arrange the parties according to their sides in the dispute." *City of Indianapolis*, 314 U.S. at 69 (cleaned up).

## ANALYSIS

All agree that, as things stand now, we lack diversity jurisdiction[6] because we have *both* a Florida Plaintiff (PG) *and* a Florida Defendant (Virginia Oaks). Aware of this problem when it removed the case, United asked us to "disregard Virginia Oaks . . . as it has been fraudulently joined to this action for the purpose of destroying jurisdiction." Notice of Removal ¶ 16. According to United, "[PG] has made no allegations or counts against Virginia Oaks. PG has simply named Virginia Oaks as a defendant but then alleges duty to defend and indemnification counts against United and Colony.

---

[6] We won't delve into the separate question of whether the amount-in-controversy requirement has been satisfied. In what strikes us as an obvious attempt to avoid our subject-matter jurisdiction, PG has suggested that the amount in controversy is *at most* $75,000. *See* Amended Complaint ¶ 1 ("This action is within the jurisdiction of [the state court] because it is in excess of $50,000.00 in monetary damages, exclusive of interests, costs, and attorneys' fees . . . but does not exceed $75,000.00."). But, in the AAA Statement of Claim—against which PG is hoping to be defended and indemnified—Virginia Oaks asserted that it will cost $262,365 more than the value of its contract with PG to finish PG's work, and that the "mitigation expenses and damages to other property in the condominium [from the accident] are $233,945." Statement of Claim ¶¶ 24–25. Plus, the insurance policies "at issue in this action contain limits in excess of $75,000." Notice of Removal ¶ 23. So, we're not entirely sure that PG can get around our diversity jurisdiction by artful pleading. *See Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1211 (11th Cir. 2007) ("If the jurisdictional amount is either stated clearly on the face of the documents before the court, *or readily deducible from them*, then the court has jurisdiction." (emphasis added)).

Further, this is a declaratory judgment action in which Plaintiff seeks coverage from its alleged insurers (United and Colony) under insurance contracts. The claimant (Virginia Oaks) is not a party to the contracts. Further, Virginia Oaks has no involvement in this coverage dispute." *Id.* ¶ 19 (cleaned up). But we cannot simply "disregard" Virginia Oaks. As our Circuit has explained, the underlying claimant (Virginia Oaks) is an indispensable party to actions (like ours) between an insured (PG) and its insurers (United and Colony). *See Ranger Ins. Co. v. United Hous. of N.M., Inc.*, 488 F.2d 682, 684 (5th. Cir. 1974) (finding, in a similar insurance-coverage dispute between insurer and insured, that the former had "failed to carry its burden" under Rule 19 of showing that the "case would not prejudice absent parties"—*viz.*, the claimants—even though the claimants were neither asserting nor defending against a cause of action);[7] *see also Am. Safety Cas. Ins. Co. v. Condor Assoc's, Ltd.*, 129 F. App'x 540, 542 (11th Cir. 2005) (per curiam) ("In *Ranger*, we affirmed the district court's conclusion that the absent tort claimants were indispensable parties to the insurer's declaratory judgment action against the insurer because, were the case allowed to proceed without them, 'the claimants' interests would be prejudiced.' . . . The district court in this case acted well within its discretion in applying the reasoning and analysis from *Ranger* to reach the conclusion that the [claimants] would be prejudiced if [the insurer's] suit were to proceed without them." (quoting *Ranger*, 488 F.2d at 683)); *Sullivan v. Everett Cash Mut. Ins. Co.*, 2023 WL 1521579, at *1 (11th Cir. Feb. 3, 2023) (per curiam) (citing *Ranger* for the proposition that third-party claimants were "indispensable—and not nominal—parties in [a] declaratory judgment action [by an insured] against [an insurer]").

Because Virginia Oaks is, therefore, properly before us, the question becomes whether Virginia Oaks should be realigned. As we warned the Defendants in our Order to Show Cause,

---

[7] *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (noting that decisions of the former Fifth Circuit rendered prior to close of business on September 30, 1981, are binding on the Eleventh Circuit).

6

however, "we have dealt with this exact issue before and found that remand was appropriate." Order to Show Cause at 3. In *Dream Builders of South Florida Corp. v. Mid-Continent Casualty Co.*, the plaintiff-insured filed a declaratory-judgment action in state court against the defendant-insurer, arguing that the defendant-insurer "had a duty to indemnify it in a separate, state-court suit a [third-party claimant] had filed against the [insured]." 2019 WL 3821552, at *1 (S.D. Fla. Aug. 15, 2019) (Altman, J.). Because the parties were diverse, the defendant-insurer removed the case to federal court. *See ibid.* But, after removal, the plaintiff-insured amended its complaint to "add [an] indispensable part[y]"—*i.e.*, the claimant from the underlying suit—as an additional defendant. *See ibid.*[8] Because the plaintiff-insured and the newly added claimant were both Florida entities, we lost our diversity jurisdiction over the case. As here, then, the defendant-insurer there filed a motion to realign the parties. *See ibid.* After giving the matter careful consideration, we denied the motion to realign, determined that we lacked subject-matter jurisdiction over the action, and remanded the case to state court. *See id.* at *4. As we explained in *Dream Builders*:

> Although the federal courts are admittedly split on this question—whether realignment is appropriate where, as here, the underlying suit is pending—federal courts across the country have routinely accepted the following three propositions (which, together, significantly undermine [the insurer's] position): (1) the parties' interests may differ meaningfully with respect to the insurer's duty to defend on the one hand and its concomitant duty to indemnify on the other; (2) the duty to indemnify does not generally ripen until the [claimant] has obtained a favorable judgment against the insured in the underlying state case; and (3) realignment at the duty to defend stage may not be appropriate—even where, hypothetically speaking, it might one day become appropriate if the insurer's duty to indemnify were to ripen. *See, e.g., Sinclair v. Auto-Owners Ins. Co.*, 22 F. Supp. 3d 1257, 1262 (N.D. Ga. 2014) (denying realignment and remanding where, as here, the [claimant] had not yet obtained a judgment in underlying state action); *Pearson v. Catlin Specialty Ins. Co.*, 2015 WL 1224104, at *3 (S.D. Ga. Mar. 17, 2015) (denying realignment where the [claimant] had not yet obtained a favorable judgment in the state action because the duty to defend was the "primary and controlling matter in the dispute"); *Scheele v. Fortney*, 2014 WL 12478006, at *3 (S.D. Fla. Nov. 20, 2014) (denying realignment); *Gulf Hauling & Const., Inc. v. QBE Ins. Corp.*, 2013 WL 2179278, at *8 (S.D. Ala. May 20, 2013) (declining to realign,

---

[8] The plaintiff-insured actually added *two* indispensable parties, but the second—its co-defendant in the underlying suit—is irrelevant to our case. *See Dream Builders*, 2019 WL 3821552, at *1.

7

>distinguishing *Vestavia Hills*, and remanding declaratory action to state court); *Preferred Chiropractic, LLC v. Hartford Cas. Ins. Co.*, 2011 WL 2149091, at *3 (S.D. Ill. May 31, 2011) (declining to realign parties and noting that adversity between the [claimant] and the [insured] "will not end until judgment has been reached in the underlying proceeding").
>
>And this makes sense. Before a judgment has been entered in the underlying state case—what we might call "the duty to defend" stage—the [claimant] has very little interest in seeing her adversary [the insured] represented—at no additional cost—by a well-funded and sophisticated insurance defense firm.
>
>To be sure, if [the claimant] is right—that is, if [the insurer] has no duty to defend [the insured] in the underlying state-court suit—then [the insurer] likewise would have no duty to indemnify [the insured]. *See Trailer Bridge, Inc. v. Illinois Nat. Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011) (citations omitted) (holding that, where there is no duty to defend, there can be no duty to indemnify). And, without a duty to indemnify, [the claimant] will have no insurance proceeds to draw from in the event [the insured] is hit with a substantial verdict. But the implications of [the claimant's] position on the availability of insurance proceeds does not support the broader claim that, as a matter of logic, the interests of [the claimant] cannot, at the duty to defend stage, be "truly" aligned with the interests of the insurer. After all, a [claimant] may logically conclude that the insured's assets are substantial enough—or that her claim is small enough—that she can make a full recovery with or without insurance. And, juxtaposing the availability of the insured's assets against the prejudice she might feel upon the appearance in her case of a large and well-funded insurance defense firm, a [claimant] might rationally decide that she prefers to do without the insurance company altogether. Indeed, a [claimant] might reasonably feel that, if [the insured] were forced to defend and indemnify itself in the state suit, it may well make the efficient business decision to settle that suit—thus avoiding, *inter alia*, the significant expense associated with the retention of outside counsel. In either of these—and perhaps other—logical scenarios, then, the [claimant's] interests would be misaligned with the interests of the [insured].

*Dream Builders*, 2019 WL 3821552, at *2–3 (cleaned up).

We went on to explain why the insurer was wrong to "suggest[ ] that the issue of indemnity [was] in fact ripe for the Court's adjudication now." *Id.* at *4. To summarize, we found that "the Eleventh Circuit has roundly rejected this argument . . . and held that the duty to indemnify does not ripen until the state-court plaintiff has obtained a favorable judgment." *Ibid.* (first citing *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768 (11th Cir. 2019); and then citing *J.B.D. Constr., Inc. v. Mid-Continent Cas. Co.*, 571 F. App'x 918 (11th Cir. 2014)). We therefore concluded that, "[b]ecause the question of indemnification is not yet ripe—and given that [the claimant's] and

8

[the insured's] interests are not, at this duty to defend stage, 'truly' aligned—a realignment in the form [the insurer] requests would be both inappropriate and, in some respects, illogical. Without this realignment, of course, Florida residents remain on both sides of this dispute—and, as a result, this Court lacks diversity jurisdiction." *Ibid.* Having made that finding, we remanded the case to state court.

Although our case turns on the *exact same issue*, United nonetheless tries to persuade us to reach the opposite conclusion here. *First*, it says, "[PG] has not made any claims against [Virginia Oaks] in this action." Motion to Realign at 4. But neither had the insurer in *Dream Builders*. And—as mentioned—the underlying claimants are "indispensable parties" in these insurance-coverage actions, even when (as here) they haven't asserted a cause of action or been named in one. *See ante*, at 6. *Second*, United argues that "[Virginia Oaks] shares an interest in [PG] being covered under one or more policies to aid in collection of a potential judgment in [Virginia Oaks's] favor in the Underlying Arbitration," *ibid.*, and that, unless we find "that [PG] is owed a defense . . . no indemnity can be owed for [those] damages," *id.* at 5. Again, however, this is the very same argument we rejected in *Dream Builders*.

Undeterred, United contends that "the circumstances at issue in this action are materially different [from those in *Dream Builders*], warranting realignment[.]" *Ibid.* Specifically, United urges us to read much into Virginia Oaks's prior strategic decisions in this case (and in the underlying arbitration), which supposedly reveal a true alignment of interests between Virginia Oaks and PG *at this point* in the litigation. According to United, "the agreement between [Virginia Oaks] and [PG] to stay the Underlying Arbitration reflects their mutual understanding that their interests are aligned in this coverage action. The sheer fact that [Virginia Oaks] agreed to the stay strongly suggests that it *does not* believe it can 'make a full recovery with or without insurance' as the Court noted in *Dream Builders*." *Id.* at 6 (emphasis in original). "[B]y virtue of the stay," United continues, "the *only* issue that can be decided by the Court at this stage of the coverage action is the duty to defend because, absent a final

9

judgment in the Underlying Arbitration, the duty to indemnify cannot ripen. . . . Thus, the only thing that could change as a result of this stage of the coverage action is that one or more insurers could be obligated to defend the Underlying Arbitration. If [Virginia Oaks] preferred that [PG] not receive a defense from [United], Colony, or both, it would have continued to pursue the Underlying Arbitration without waiting for a resolution of the coverage action." *Ibid.* (emphasis in original). United thus concludes that "the scenarios identified by this Court when it reached its decision in *Dream Builders* are simply not present in this case[.]" *Ibid.*

By now, though, we know that United's speculation about Virginia Oaks's position was misplaced. In response to United's filing, Virginia Oaks has (rather helpfully) submitted its Objections to Removal and Realignment,[9] in which it explicitly disavows United's conjectures. Virginia Oaks "objects to the removal and realignment of this matter," and, "as the [claimant] in arbitration seeking damages against [PG]," it emphatically declares that its "interests are not aligned with [PG's]." *Id.* at 1. For all the reasons we outlined in *Dream Builders*, we agree with Virginia Oaks's objections and see no good reason to depart from our *Dream Builders* analysis. *See Dream Builders*, 2019 WL 3821552, at *3 ("'[The claimant's] insistence here that her interests are, in fact, misaligned with [the insured's]—an insistence that necessarily precludes her from later supporting any argument [the insured] might make for indemnification—certainly belies [the insurer's] point that, in a declaratory judgment action that arises at the duty to defend stage, the interests of [claimants] necessarily align with those of

---

[9] There has been some uncertainty about the nature of this filing. Because Virginia Oaks noted that it "respectfully requests that this Court remand these proceedings to the Florida Circuit Court," Virginia Oaks's Objections at 2, United is concerned that we may (inappropriately) treat the filing as a motion to remand, *see* United's Response [ECF No. 49] at 1–2 ("While [United] does not believe the Objection qualifies as a motion . . . , it files this response out of an abundance of caution [and] denies that [Virginia Oaks's] 'objection' to removal is proper, reiterates that [Virginia Oaks] and [PG] have aligned interest in this coverage action and denies that remand is proper[.]"). We agree with United that the Objections don't qualify as a motion, and we construe that filing as a kind of notice of Virginia Oaks's position—nothing more.

[insureds]."). Having thus refused to realign Virginia Oaks, we find that we lack subject-matter jurisdiction over this case.

* * *

After careful review, therefore, we **ORDER and ADJUDGE** as follows:

1. United's Motion to Realign [ECF No. 43] is **DENIED**.

2. Because we lack subject-matter jurisdiction, this case is **REMANDED** to Florida's Eleventh Judicial Circuit in and for Miami-Dade County.

3. This case remains **CLOSED**. All pending deadlines are **TERMINATED**, and any pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in the Southern District of Florida on April 11, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record